IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **ROBERT LOOPE**, individually and on behalf of all others similarly situated, | Case No.   5:22-cv-349 (GTS/ML) |
| *Plaintiff*, | **CLASS ACTION COMPLAINT** |
| v. | |
| **NVA FINANCIAL SERVICES, LLC**, a Virginia limited liability company, | **DEMAND FOR JURY TRIAL** |
| *Defendant*. | |

## CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff Robert Loope ("Plaintiff" or "Loope") brings this Class Action Complaint against Defendant NVA Financial Services, LLC ("Defendant" or "NVA Financial") to stop Defendant's practice of placing calls to consumers which violate the federal Telephone Consumer Protection Act (TCPA), including the National Do Not Call Registry rules, and to obtain redress for all persons similarly injured by Defendant's conduct. Plaintiff also seeks an award of statutory damages to the members of the Class, plus court costs and reasonable attorneys' fees. Plaintiff, for his Complaint, alleges as follows upon personal knowledge as to himself and his own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by his attorneys.

## PARTIES

1. Plaintiff Loope is a natural person over the age of eighteen (18) and is a citizen of the State of New York. Loope resides in Onondaga County.

2. Defendant NVA Financial is a limited liability company organized in and existing under the laws of the Commonwealth of Virginia, with its principal place of business located at 12800 Dunvegan Dr., Clifton, Virginia.

## JURISDICTION & VENUE

3. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, as the action arises under the Telephone Consumer Protection Act, 47 U.S.C. §227, et seq., a federal statute. This Court also has jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332 ("CAFA"), because the alleged Class consists of over 100 persons, there is minimal diversity, and the claims of the class members when aggregated together exceeds $5 million. Further, none of the exceptions to CAFA applies.

4. This Court has personal jurisdiction over Defendant NVA Financial pursuant to federal due process and New York State's long-arm statute, i.e., N.Y.C.P.L.R. § 302(a), because Defendant, among other things, transacts substantial business within New York State; solicits significant business in New York; contracts to supply goods and services in New York; purposefully directed its telemarketing to New York; serves, directly or indirectly, the market in New York; a significant portion of the events or claims giving rise to this Complaint arise out of, relate to, were directed to, and/or occurred within New York;  Defendant committed tortious acts outside New York causing injury to person or property within said state; Defendant regularly conducts business in New York and/or derives substantial revenue from goods used or services rendered in said state; or Defendant expects or should reasonably expect the acts complained of to have consequences in New York and derives substantial revenue from interstate or international commerce.

5. Venue is proper pursuant to 28 U.S.C. § 1391(b) because Plaintiff resides in this District and because a substantial portion of the wrongful conduct giving rise to this case occurred in, and/or emanated from this District.

## COMMON ALLEGATIONS OF FACT

6. Defendant NVA Financial is a company that markets financial service products to consumers across the country.

7. Unfortunately for consumers, NVA Financial casts its marketing net too wide. That is, in an attempt to promote its business and to generate leads for its financial products, Defendant conducted (and continues to conduct) a wide scale telemarketing campaign that repeatedly makes unsolicited autodialed and prerecorded phone calls to consumers' telephones, including cellular telephones, without prior express consent to make these calls. Indeed, NVA Financial (or its telemarketers) places these calls to telephones using an ATDS without consumers' prior written express consent in violation of the TCPA.

8. In an effort to obtain leads for its services, NVA Financial made (or directed to be made on its behalf) repeated calls to Plaintiff and other members of the Class without first obtaining express consent to do so—in violation of the TCPA.

9. The TCPA was enacted to protect consumers from unauthorized calls exactly like those alleged in this Complaint—calls placed to numbers without prior express written consent.

10. By making the unauthorized calls at issue in this Complaint, Defendant caused Plaintiff and the members of the Class actual harm and cognizable legal injury. This includes the aggravation and nuisance and invasions of privacy that result from the receipt of such calls as well as a loss of value realized for any monies that consumers paid to their carriers for the receipt of such calls. Furthermore, the calls interfered with and interrupted Plaintiff's and the other Class

members' use and enjoyment of their phones, including the related data, software, and hardware components. Defendant also injured the Plaintiff and Class members by causing wear and tear on their phones, consuming battery life, and appropriating cellular minutes and data.

11. At no time did Defendant obtain prior express consent from Plaintiff and the Class members to receive calls from Defendant.

12. Defendant knowingly made, and continues to make, (either directly or via a third-party acting on its behalf) unsolicited telemarketing calls without the prior express consent of the recipients. As such, Defendant not only invaded the personal privacy of Plaintiffs and members of the putative Class, it also intentionally and repeatedly violated the TCPA.

13. Defendant was, and is, aware that the unsolicited calls described herein were made to consumers like Plaintiff who have not consented to receive them.

14. To the extent any third party made the calls, the third party acted on behalf of Defendant, at Defendant's direction and control, for Defendant's knowing benefit, and with Defendant's approval. Defendant ratified the making of any such calls.

15. To redress these injuries, Plaintiffs, on behalf of themselves and a Class of similarly situated individuals, bring this suit under the TCPA, which prohibits unsolicited calls to telephones registered on the Do Not Call list.

16. On behalf of the Class, Plaintiffs seek an injunction requiring Defendant to cease all unauthorized calling activities to persons without first securing prior express consent and an award of statutory damages to the class members, together with pre- and post-judgment interest, costs and reasonable attorneys' fees.

## FACTS SPECIFIC TO PLAINTIFF

17. Plaintiff Loope is the customary user of the personal cellular telephone number ending in 4995.

18. Plaintiff Loope registered his phone number on the National Do Not Call Registry on August 24, 2005.

19. Plaintiff Loope's number ending in 4995 is a personal cellphone number and is not used for business purposes.

20. Beginning in October 27, 2020, Loope began receiving a barrage of autodialed telemarketing calls soliciting Loope to hire NVA Financial for his financial and bankruptcy services.

21. Loope received the following calls:

- October 27, 2020 from the number 716-528-8117
- October 29, 2020 from the number 716-528-8117
- November 3, 2020 from the number 716-528-8117
- November 6, 2020 from the number 716-528-8117
- November 10, 2020 from the number 716-528-8117
- November 30, 2020 from the number 716-528-8117
- December 1, 2020 from the number 716-528-8117
- December 18, 2020 from the number 716-528-8117
- December 21, 2020 from the number 716-528-8117
- December 22, 2020 from the number 516-778-5166

22. Thus, Loope received at least ten (10) unsolicited calls within the span of a couple of two months, all made to solicit Loope to hire NVA Financial for their services.

23. Loope called NVA on or around November 19, 2020 and asked NVA to remove his name from their calling list and to stop calling him. Unfortunately, the calls persisted.

24. Loope does not have a relationship with Defendant of any kind. He has never provided his telephone number directly to Defendant and has never requested that Defendant place any calls to him. Plaintiff Loope has never provided any form of prior express written or oral consent to receive calls from or on behalf of Defendant despite listing his number on the National Do Not Call Registry. He has no business or other relationship with the Defendant.

25. When Loope answered the calls, he heard a pause and a click before an operator came on the line. This is indicative of the use of an ATDS.

26. All of the calls were placed via an ATDS at the direction and oversight of Defendant. Defendant knew about, directed, ratified, and benefitted from calls.

27. Defendant was, and still is, aware that the above-described autodialed calls were sent to consumers like Plaintiff who have not consented to receive them.

28. On information and belief, the equipment used to place the calls at issue has the capacity to use a random or sequential number generator in the process of storing numbers from a pre-produced list for texting at a later date.

29. The equipment at issue also has the capacity to produce telephone numbers using a random or sequential number generator. Specifically, the texting software, by virtue of being inextricably linked to a computer operating system, has the capacity to generator random or sequential telephone numbers.

### CLASS ACTION ALLEGATIONS

30. Plaintiff Loope brings this action pursuant to Federal Rule of Civil Procedure 23(b)(2) and Rule 23(b)(3) on behalf of themselves and a Class defined as follows:

**No Consent Class:** All persons in the United States who (1) from the date four years prior to the filing of this Complaint through the date notice is sent to the Class; (2) received at least one call from Defendant, or a third person acting on behalf of Defendant; (3) on the person's cellular telephone; (4) for the purpose of selling Defendant's products and services; (5) using the same equipment that was used to call the Plaintiff; and (6) for whom Defendant claims it obtained prior express written consent in the same manner as Defendant claims it obtained prior express written consent to call the Plaintiff.

**Do Not Call Registry Class:** All persons in the United States who from four years prior to the filing of this action through class certification (1) Defendant (or an agent acting on behalf of the Defendant) called more than one time, (2) within any 12-month period, (3) where the person's telephone number had been listed on the National Do Not Call Registry for at least thirty days, (4) for substantially the same reason Defendant called Plaintiff, and (5) for whom Defendant claims (a) they obtained prior express written consent in the same manner as Defendant claim they supposedly obtained prior express written consent to call Plaintiff, or (b) they did not obtain prior express written consent.

**Internal Do Not Call Class:** All persons in the United States who from four years prior to the filing of this action through class certification (1) Defendant (or an agent acting on behalf of Defendant) called more than one time (2) within any 12-month period (3) for substantially the same reason Defendant called Plaintiff.

31.     The following people are excluded from the Classes: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which the Defendant or its parents have a controlling interest and its current or former employees, officers and directors; (3) persons who properly execute and file a timely request for exclusion from the Classes; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiff's counsel and Defendant's counsel; and (6) the legal representatives, successors, and assignees of any such excluded persons. Plaintiff anticipates the need to amend the class definition following appropriate discovery.

32. **Numerosity:** The exact number of members within each Class is unknown and not available to Plaintiff at this time, but it is clear that individual joinder is impracticable. On information and belief, Defendant has placed telemarketing calls to thousands of consumers who fall into the defined Class. Members of the Class can be objectively identified through reference to Defendant's records, consumer phone records, and other evidence to be gained in discovery.

33. **Typicality:** Plaintiff's claims are typical of the claims of other members of the Class, in that Plaintiff and the members of the Class sustained damages arising out of Defendant's uniform wrongful conduct.

34. **Adequate Representation:** Plaintiff will fairly and adequately represent and protect the interests of the Class, and she have retained counsel competent and experienced in complex class actions. Plaintiff has no interests antagonistic to those of the Class, and Defendant has no defenses unique to Plaintiff.

35. **Commonality and Predominance:** There are many questions of law and fact common to the claims of Plaintiff and the Class, and those questions predominate over any questions that may affect individual members of the Class. Common questions for the Class include, but are not necessarily limited to the following:

    (a)    Whether Defendant's conduct violated the TCPA;

    (b)    Whether Defendant systematically made unsolicited telephone calls to consumers whose telephone numbers were registered with the National Do Not Call Registry;

    (c)    Whether any third party made the calls and, if so, whether Defendant is liable for such calls;

    (d)    Whether Defendant secured prior express consent;

  (e)  Whether the calls were placed using an ATDS;

  (d)  Whether the Plaintiff and the other members of the Classes are entitled to statutory damages; and

  (e)  Whether Defendant acted willfully so as to require an award of treble damages;

36. **Superiority:** This case is also appropriate for class certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy. Joinder of all parties is impracticable, and the damages suffered by the individual members of the Class will likely be relatively small, especially given the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's actions. Thus, it would be virtually impossible for the individual members of the Class to obtain effective relief from Defendant's misconduct. Even if class members could sustain such individual litigation, it would still not be preferable to a class action, because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single Court. Economies of time, effort and expense will be fostered and uniformity of decisions ensured.

**FIRST CLAIM FOR RELIEF**
Violation of the TCPA, 47 U.S.C. § 227, *et seq.*
**(On behalf of Plaintiff and the No Consent Class)**

37. Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

38. Defendant made unsolicited autodialed calls to cellular telephone numbers belonging to Plaintiff and the other members of the No Consent Class, without their prior express written consent in an effort to generate business for Defendant's products and services.

39. Defendant failed to obtain any prior express consent that included, as required by 47 C.F.R. § 64.1200(f)(8)(i), a "clear and conspicuous" disclosure informing the person signing that:

(A) By executing the agreement, such person authorizes the seller to deliver or cause to be delivered to the signatory telemarketing calls using an automatic telephone dialing system or an artificial or prerecorded voice; and

(B) The person is not required to sign the agreement (directly or indirectly), or agree to enter into such an agreement as a condition of purchasing any property, goods, or services.

40. Further, Defendant made the calls using equipment that had the capacity to store or produce telephone numbers to be called using a random or sequential number generator, and/or to receive and store lists of phone numbers, and to dial such numbers, *en masse*, simultaneously and without human intervention.

41. By making the unsolicited calls to Plaintiff and members of the Class's cellular telephones without prior express written consent, and by utilizing an ATDS, Defendant violated 47 U.S.C. § 227(b).

42. As a result of Defendant's unlawful conduct, Plaintiff and the members of the No Consent Class suffered actual damages in the form of monies paid to receive the unsolicited phone calls on their cellular telephones and, under Section 227(b)(3)(B), are each entitled to, *inter alia*, a minimum of $500 in damages for each such violation of the TCPA.

43. Should the Court determine that Defendant's conduct was willful and knowing, the Court may, pursuant to Section 227(b)(3), treble the amount of statutory damages recoverable by Plaintiff and the other members of the No Consent Class.

## SECOND CLAIM FOR RELIEF
### Telephone Consumer Protection Act
### (Violation of 47 U.S.C. § 227)
### (On Behalf of Plaintiff and the Do Not Registry Class)

44. Plaintiff repeats and realleges the prior paragraphs of this Complaint and incorporates them by reference herein.

45. The TCPA's implementing regulation, 47 C.F.R. § 64.1200(c), provides that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government."

46. Any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" may bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object. 47 U.S.C. § 227(c).

47. Defendant violated 47 C.F.R. § 64.1200(c) by initiating, or causing to be initiated, telephone solicitations to telephone subscribers such as Plaintiff and the Do Not Call Registry Class members who registered their respective telephone numbers on the National Do Not Call Registry, a listing of persons who do not wish to receive telephone solicitations that is maintained by the federal government.

48. Defendant violated 47 U.S.C. § 227(c)(5) because Plaintiff and the Do Not Call Registry Class received more than one telephone call in a 12-month period made by or on behalf

of the Defendant in violation of 47 C.F.R. § 64.1200, as described above.

49. As a result of Defendant's conduct as alleged herein, Plaintiff and the Do Not Call Registry Class suffered actual damages and, under section 47 U.S.C. § 227(c), are entitled, inter alia, to receive up to $500 in damages for such violations of 47 C.F.R. § 64.1200.

50. To the extent Defendant's misconduct is determined to be willful and knowing, the Court should, pursuant to 47 U.S.C. § 227(c)(5), treble the amount of statutory damages recoverable by the members of the Do Not Call Registry Class.

**THIRD CLAIM FOR RELIEF**
**Telephone Consumer Protection Act**
**(Violation of 47 U.S.C. § 227)**
**(On Behalf of Plaintiff and the Internal Do Not Registry Class)**

51. Plaintiff repeats and realleges the prior paragraphs of this Complaint and incorporates them by reference herein.

52. Under 47 C.F.R. § 64.1200(d), "[n]o person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity. The procedures instituted must meet the following minimum standards:

> (1) Written policy. Persons or entities making calls for telemarketing purposes must have a written policy, available upon demand, for maintaining a do-not-call list.
>
> (2) Training of personnel engaged in telemarketing. Personnel engaged in any aspect of telemarketing must be informed and trained in the existence and use of the do-not-call list.
>
> (3) Recording, disclosure of do-not-call requests. If a person or entity making a call for telemarketing purposes (or on whose behalf such a call is made) receives a request from a residential telephone subscriber not to receive calls from that person or entity, the person or entity must record the request and place the subscriber's name, if provided, and telephone number on the do-not-call list at the time the request is made. Persons or

entities making calls for telemarketing purposes (or on whose behalf such calls are made) must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made. This period may not exceed thirty days from the date of such request. If such requests are recorded or maintained by a party other than the person or entity on whose behalf the telemarketing call is made, the person or entity on whose behalf the telemarketing call is made will be liable for any failures to honor the do-not-call request. A person or entity making a call for telemarketing purposes must obtain a consumer's prior express permission to share or forward the consumer's request not to be called to a party other than the person or entity on whose behalf a telemarketing call is made or an affiliated entity.

(4) Identification of sellers and telemarketers. A person or entity making a call for telemarketing purposes must provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted. The telephone number provided may not be a 900 number or any other number for which charges exceed local or long distance transmission charges.

(5) Affiliated persons or entities. In the absence of a specific request by the subscriber to the contrary, a residential subscriber's do-not-call request shall apply to the particular business entity making the call (or on whose behalf a call is made), and will not apply to affiliated entities unless the consumer reasonably would expect them to be included given the identification of the caller and the product being advertised.

(6) Maintenance of do-not-call lists. A person or entity making calls for telemarketing purposes must maintain a record of a consumer's request not to receive further telemarketing calls. A do-not-call request must be honored for 5 years from the time the request is made.

53.   Defendant or their agents made marketing calls to Plaintiff and members of the Internal Do Not Call Class without implementing internal procedures for maintaining a list of persons who request not to be called by the entity and/or by implementing procedures that do not meet the minimum requirements to allow Defendant to initiate telemarketing calls.

54.   The TCPA provides that any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" bring a private action based on a violation of said

regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object. 47 U.S.C. § 227(c)(5).

55. Defendant has, therefore, violated 47 U.S.C. § 227(c)(5). As a result of Defendant's conduct, Plaintiff and the other members of the Internal Do Not Call Class are each entitled to up to $1,500 per violation.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Loope, on behalf of himself and the Class, pray for the following relief:

A. An order certifying the Classes as defined above, appointing Plaintiff Brennan as the representatives of the Classes and appointing their counsel as Class Counsel;

B. An award of actual monetary loss from such violations or the sum statutory damages for each violation, whichever is greater, all to be paid into a common fund for the benefit of the Plaintiffs and the Class Members;

C. An order declaring that Defendant's actions, as set out above, violate the TCPA and the VTPPA;

D. An award of pre- and post-judgment interest;

E. An award of reasonable attorneys' fees and costs to be paid out of the common fund prayed for above; and

F. Such other and further relief that the Court deems reasonable and just.

## JURY DEMAND

Plaintiffs request a trial by jury of all claims that can be so tried.

Dated: April 13, 2022

Respectfully submitted,

**ROBERT LOOPE**, individually and on behalf of all others similarly situated,

By:    /s/ James R. Peluso
       One of Plaintiff's Attorneys

James R. Peluso (Bar Roll # 105634)
jpeluso@dblawny.com
Dreyer Boyajian LLP
75 Columbia Street
Albany, NY 12210
Telephone: (518) 463-7784
Facsimile: (518) 463-4039

Patrick H. Peluso*
ppeluso@woodrowpeluso.com
Woodrow & Peluso, LLC
3900 East Mexico Ave., Suite 300
Denver, Colorado 80210
Telephone: (720) 213-0675
Facsimile: (303) 927-0809

Attorneys for Plaintiff and the Classes

* *Pro Hac Vice* Admission to Be Sought

15